Wilbert T. BROWN

v.

**CITY OF GALVESTON, TEXAS, Philip M. Lipnick, Individually, and Kathi Flowers, Individually.**

Civ. A. No. G–94–137.

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 30, 1994.

Patrick J. Gilpin, Houston, TX, for plaintiff.

John W. Odam, Beirne Maynard & Parsons, Houston, TX, for defendants.

1. Plaintiff alleges that he was subjected to a variety of (largely unspecified) "retaliations" for making his complaint. (See Plaintiff's Original Complaint, Instrument # 1, at 4–5). Neverthe-

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

This is a wrongful termination suit in which Plaintiff Wilbert Brown ("Brown") was fired from his position as a Traffic Signal Technician with the City of Galveston, Texas ("City of Galveston"). Plaintiff Brown contends that his due process rights were violated by the City of Galveston, and he claims violations of 42 U.S.C. § 1983; conspiracy under 42 U.S.C. § 1983; Texas common law conspiracy; wrongful termination; the intentional infliction of emotional distress; and a breach of the duty of care by Defendants Philip Lipnick ("Lipnick") and Kathi Flowers ("Flowers"). Before the Court now is Defendants' Motion for Summary Judgment. For the reasons stated below, the Court finds all Plaintiff's claims to be without merit, and Defendants' Motion for Summary Judgment is **GRANTED**. Consequently, all claims made against them in the above-captioned action are **DISMISSED WITH PREJUDICE**.

### 1. Background

Plaintiff Brown was originally hired by the City of Galveston on January 23, 1984 and was promoted to the position of Traffic Signal Technician III in October, 1991. On or about November 20, 1992, Brown joined other employees of his department in filing a complaint against Defendant Lipnick, claiming that he displayed an antagonistic attitude and failed to consider the employees' viewpoints. On December 2, 1992, Defendant Flowers held a meeting of the complaining employees, after which she issued a memo supporting Lipnick.

At some (unspecified) point after the grievance was filed, Brown requested a forty-five day unpaid leave of absence after his son was killed in a military plane crash. The request was denied by Defendants Lipnick and Flowers, but it was later approved by the City of Galveston Manager.[1] After returning to work, Brown was required to do some manu-

less, Plaintiff has brought no cause of action for retaliatory discharge, and this Court will not discuss any such claim.

al labor, work which was characteristic of the responsibilities of a Traffic Signal Technician II position, but not a Technician III job. When Brown challenged Lipnick for requiring him to do such work, he was advised that he was free to go home without pay for that day's work. On April 22, 1993, the next day, Lipnick fired Brown from his position.

### 2. Analysis

#### 1. Plaintiff's § 1983 Complaint

■ Plaintiff Brown alleges that he has been deprived of his due process rights and has brought this action against Defendants under 42 U.S.C. § 1983. In order to establish a claim of denial of procedural due process, a Plaintiff must prove that he had a constitutionally protected property or liberty interest that has been infringed by the Defendant. See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The Court finds that neither a property nor a liberty interest has been infringed in this case.

■ As an initial matter, Brown has not even alleged in this case that his liberty interests have been violated. In order to show the deprivation of a protected liberty interest, a Plaintiff must show that he has been stigmatized in connection with some other violation of a property or statutory violation such that he is hindered in the pursuit of his chosen profession. Roth, supra, 408 U.S. at 573–75, 92 S.Ct. at 2707–08. Not having alleged any such stigmatization or impediment to his professional pursuits, Brown has clearly not shown that his liberty interests have been violated by the Defendants.

■ Brown has also failed to show that he has suffered the deprivation of a protected property interest. This Court has carefully—and repeatedly—explained the fundamental law concerning protected property interests involved in a due process claim like the one Plaintiff has brought. See, e.g., Idoux v. Lamar University System, 828 F.Supp. 1252 (E.D.Tex.1993) (Kent, J.), aff'd. in part, 37 F.3d 632 (5th Cir.1994); Strother v. Columbia–Brazoria Ind. School District, 839 F.Supp. 459 (S.D.Tex.1993) (Kent, J.), aff'd., 32 F.3d 565 (5th Cir.1994). Because Plaintiff appears to be unaware of these or other relevant case authorities for his contention, the Court will once again explain the law controlling a claim of deprivation of a property interest under the Fourteenth Amendment.[2]

■ As stated above, in order to prevail on a due process claim, the Plaintiff must first demonstrate that he had a constitutionally protected property interest in his continued employment with the City of Galveston. Roth, supra, 408 U.S. at 569, 92 S.Ct. at 2709. A property interest for the purpose of due process claims is "an entitlement grounded in state law, which cannot be removed except 'for cause.'" Logan v. Zimmerman Brush Co., 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982). Thus, while the Constitution provides procedural safeguards against state deprivation of property interests, the interests themselves "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Roth, supra, 408 U.S. at 577, 92 S.Ct. at 2709. These property rights can be created by state statute, local ordinance, written contract, or mutually explicit understandings enforceable under state law as express or implied contracts. Johnson v. Southwest Miss. Regional Med. Center, 878 F.2d 856, 858 (5th

---

**2.** Plaintiff has also brought a claim that his Fifth Amendment property interests have also been violated. As the Supreme Court has explained, a public employee like the Plaintiff has a property interest in his job within the meaning of the due process clauses of both the Fifth and Fourteenth Amendments if he can be fired only for misconduct or "just cause." See, e.g., Loudermill, supra,

470 U.S. at 532, 105 S.Ct. at 1487; see also Jungels v. Pierce, 825 F.2d 1127, 1130 (7th Cir. 1987). However, having found that Brown has no protected property interest in his continued employment with the City of Galveston, this Court does not address his Fifth Amendment claim separately, and any such claim is hereby **DISMISSED WITH PREJUDICE.**

Cir.1989); *Irby v. Sullivan,* 737 F.2d 1418, 1421 (5th Cir.1984). The property interest arises when the statute, rule, contract, or understanding limits an entity's power to terminate a Plaintiff only for just cause. *Henderson v. Sotelo,* 761 F.2d 1093, 1095–96 (5th Cir.1985).

Plaintiff's only claim for a property interest in this case is that the City of Galveston's Personnel Rules and Regulations ("Personnel Rules") set out a "just cause" standard for employee termination. To adjudicate Plaintiff's claim, therefore, this Court must turn to the relevant law of the State of Texas, unguided by any briefing on this point by either Plaintiff or the City of Galveston, which claims that Plaintiff has no protected property interest in his employment but fails to direct the Court's attention to any relevant case authority. (See Defendants' Motion for Summary Judgment, Instrument # 6, at 4).

 It has been the well-established law of Texas for over a century that all employees are presumed to be hired "at-will." *See East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 75, 10 S.W. 99, 102 (1888); *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex.1985). Plaintiff Brown's sole contention is that this presumption of at-will employment has been overcome in this case by a statement contained in the City of Galveston's Personnel Rules. Section 4.18(a) of those Rules states that "[a]ny employee may be discharged for just cause by a department head subject to review by the City Manager." (See Defendants' Motion for Summary Judgment, Exhibit A). In response, Defendants claim that under Section 6.11(a), the City of Galveston has retained its right to hire all employees at-will. Section 6.11(a) states:

> The City retains all its rights in regards to employment. The City Manager may discharge, demote, transfer, reduce in pay, temporarily suspend without pay, or reprimand an employee. This authority may be delegated to the department heads.

The Court finds both Plaintiff's and Defendants' arguments unpersuasive. First, Defendants' claim that Section 6.11(a), in itself, validly modifies any "just cause" standard in the Personnel Rules is utterly without merit. The Fifth Circuit has clearly stated that "[i]t

is a truism in the law that such disavowals are not controlling." *Aiello v. United Air Lines, Inc.,* 818 F.2d 1196, 1200 (5th Cir. 1987). In *Aiello,* the disavowal in question stated that the Defendant's regulations were "not intended to be, and do not constitute, a contractual arrangement or agreement between the company and its employees of any kind, ... [and] that all employment is 'at will.'" *Id.* at 1198. Obviously, the City of Galveston's "disavowal" in Section 6.11(a) is, at best, an *implicit* rejection of any "just cause" standard and does not approach the explicit retention of an "at-will" standard like that in *Aiello.* Thus, if the *Aiello* disavowal was not controlling, Section 6.11(a) can hardly be found to be a valid contractual retention of the Texas "at-will" standard.

 Defendants' argument, however, is irrelevant in this case because the Court finds as a matter of law that Section 4.18(a) of the Personnel Rules does not itself create a "just cause" standard for employee termination. It is a well-established general rule in Texas law that personnel manuals or handbooks like the one in this case that state that termination will be for "just cause" do not create contractual rights. *Zimmerman v. H.E. Butt Grocery, Co.,* 932 F.2d 469, 471 (5th Cir.), *cert. denied,* 502 U.S. 984, 112 S.Ct. 591, 116 L.Ed.2d 615 (1991). An employee manual "standing alone, may not expressly or impliedly limit an employer's ability to terminate an employee at will." *Glagola v. North Texas Municipal Water District,* 705 F.Supp. 1220, 1223 (E.D.Tex.1989):

> In order to alter the employment at-will rule, a plaintiff must rely on something more than an employee handbook; there must be evidence of an oral agreement specifically adopting the handbook as in [*United Transportation Union v. Brown,* 694 S.W.2d 630 (Tex.App.—Texarkana 1985, writ ref'd n.r.e.)], or a course of conduct on the part of the employer and employees treating the handbook as a contract....

*Id.*

 Texas cases make clear that for an employment manual to alter the at-will relationship, it must "specifically and ex-

pressly limit[ ] the relationship and curtail[ ] the employer's right to terminate the employee." *Almazan v. United Services Automobile Assoc., Inc.,* 840 S.W.2d 776, 780 (Tex. App.—San Antonio, 1992, no writ). Unsigned handbooks are generally regarded as insufficient memoranda of an employment contract and may not satisfy the Statute of Frauds. *Molder v. Southwestern Bell Telephone,* 665 S.W.2d 175 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). In particular, where there is no express agreement limiting the employer's right to unilaterally amend or withdraw the handbook, no modification of the employee's at-will status will be found. *Reynolds Manufacturing Co. v. Mendoza,* 644 S.W.2d 536, 539 (Tex.App.—Corpus Christi 1982, no writ).[3]

■ Nevertheless, some employment manuals that set forth rules and procedures may be read as granting a right of continued employment, *Renken v. Harris County,* 808 S.W.2d 222, 225 (Tex.App.—Houston [14th Dist.] 1991, no writ), although the mere inclusion of grievance procedures does not itself create a property interest. *Wells v. Hico Independent School District,* 736 F.2d 243, 251–55 (5th Cir.1984), *cert. denied,* 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985). In *Aiello, supra,* 818 F.2d at 1196, the Fifth Circuit found that the inclusion of detailed disciplinary procedures overcame employment at will, especially "where it can be shown that the company supervisory personnel agreed to or recognized the modification of an at-will concept by recognizing the obligation to discharge only for cause." *Id.* at 1198–99.

The Court does not believe that *Aiello* applies to Plaintiff Brown's discharge in this case. In *Aiello,* not only did management itself believe that the employment handbook created a contract overcoming at-will employment, all parties stipulated to that fact in pre-trial orders. *Id.* at 1198. In this case, however, there is no evidence whatsoever that the City of Galveston ever considered the Personnel Rules to be a contract for just-cause termination; that it ever represented

to Brown that such a contract had been created; or that Brown ever relied on such a concept before he was terminated. Nor has any evidence been presented suggesting that an express agreement to limit the City of Galveston's right to terminate Brown at will ever exited, as required by *Reynolds Manufacturing, supra,* 644 S.W.2d at 539.

For these reasons, the Court determines that Plaintiff Brown was at all times an employee at-will and that he therefore had no property interest in continued employment by the City of Galveston. Thus, Defendants have not violated 42 U.S.C. § 1983. Having decided the issue on these grounds, the Court does not address Defendants' assertion that they are entitled to qualified immunity. Plaintiff's Motion for Summary Judgment on Plaintiff's § 1983 complaint is **GRANTED,** and Plaintiff's § 1983 complaint is hereby **DISMISSED WITH PREJUDICE.**

### 2. Plaintiff's § 1983 Conspiracy Complaint

■ Plaintiff Brown also complains that Defendants have conspired to deprive him of his civil rights. The Fifth Circuit has clearly held that conspiracy claims for the violation of § 1983 can be brought, but a conspiracy itself is not actionable under § 1983. *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1186 (5th Cir.1990). To prevail under a conspiracy claim, a Plaintiff must show (1) the existence of a conspiracy that involves state action and (2) the deprivation of civil rights in furtherance of a conspiracy by a party to the conspiracy. *Id.* at 1187. Having already decided that no underlying violation of 42 U.S.C. § 1983 has occurred in this case, it is axiomatic that Plaintiff's conspiracy contention is without merit. Thus, Defendants' Motion for Summary Judgment on the § 1983 conspiracy complaint is **GRANTED,** and Plaintiff's conspiracy complaint is **DISMISSED WITH PREJUDICE.**

### 3. Plaintiff's State–Law Complaints

Plaintiff Brown has also claimed that Defendants have violated the Texas law forbid-

---

**3.** An oral promise by the employer that a "just cause" standard in an employment manual will be applied to the employee may create a contrac

tual right even though the manual could be unilaterally withdrawn by the employer. *Brown, supra,* 694 S.W.2d at 633:

ding wrongful termination, breach of duty of care, conspiracy, and the intentional infliction of emotional distress. Although the Court would ordinarily be inclined to remand undisposed of state-law claims for proper adjudication in state court, in this case Plaintiff's claims are so weak on their face that the Court will dispose of all remaining state-law issues.

First, having already established that Plaintiff was at all times an employee at-will, the Court finds that Defendants neither wrongfully terminated Brown nor violated any duty of care they may have owed to him.

■■■■ Secondly, to establish a claim of civil conspiracy under Texas law, a Plaintiff must show "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Schlumberger Well Surveying Corp. v. Nortex Oil and Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968) (quoting *Great Nat'l Life Ins. Co. v. Chapa, Tex.*, 377 S.W.2d 632, 635 (Tex.1964)). In this case, Brown's status as an employee at-will allowed Defendants to terminate his employment at any time for no cause. Thus, the "purpose" of Defendants' actions—firing—was lawful, as was the means by which it was undertaken.

■■■■ Plaintiff's claim of intentional infliction of emotional distress is equally groundless. The Texas Supreme Court has recently acknowledged the existence of this tort in Texas. *Twyman v. Twyman*, 855 S.W.2d 619 (Tex.1993). In order to establish the elements of such a tort, a Plaintiff must show that the Defendant's action was "outrageous" conduct, defined as behavior which goes "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993). However, intentional infliction of emotional distress is *not* available to an employee at-will unless the method of termination is itself the basis of the tort. *Id.*

■■■ No evidence in this case suggests that Defendants' actions even approached such a standard. Plaintiff's evidence shows that after Defendant Lipnick ordered him to do some manual labor required of Traffic Signal Repairmen one grade below his, Brown was ordered to go home without pay and was fired the following day. (See Plaintiff's Original Complaint, at 5–6). Being fired is always painful; it may even be experienced as humiliating. However, the Court must examine a Defendant's objective actions and not rest content with the fact that a Plaintiff may have subjectively experienced his firing as painful. In this case, even if the Court were to find Defendants' actions injudicious or inappropriate, under no scenario could it find that such actions were "outrageous," "atrocious," or violative of basic standards of civilized communities. In addition, nothing suggests that Plaintiff's claim that he has suffered severe physical and emotional pain and that he will suffer adverse emotional effects for the remainder of his life could possibly be ascribed to Defendants' actions. (See id. at 11).

■■■ Yet, even if the Court were to find that Plaintiff has established the elements of these state-law complaints, it agrees with Defendants that they are protected from suit in this matter under the doctrine of official immunity. Texas law allows the affirmative defense of official immunity to be raised where a Defendant demonstrates that he has acted in the performance of discretionary duties performed in good faith within the scope of the official's authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994). In this case, it is clear that Defendants' termination of Brown was discretionary, which the Texas Supreme Court defines as "an action involv[ing] personal deliberation, decision and judgment." *Id.* at 654. Defendants were not *required* to discharge Brown under the Personnel Rules; rather, they were *allowed* to exercise their own discretion: "Any employee *may* be discharged for just cause by a department head subject to review by the City Manager." (See Defendants' Motion for Summary Judgment, Exhibit 1, at 22).

Secondly, Defendants also acted in good faith. It is elementary that as an employee at-will, Brown could have been discharged for good cause or for no cause at all. The Texas good-faith test for official immunity is derived from an analogous test used in feder-

al immunity law that holds that good faith is determined by the objective legal reasonableness of an action: could a reasonable official have believed his or her conduct to be lawful in light of clearly established law and information possessed by the official at the time? *See City of Lancaster, supra,* 883 S.W.2d at 656–57. Having already decided that Brown was an employee at will under the Personnel Rules, it is axiomatic that a reasonable official could have believed that terminating Brown was lawful. Unlike in *Aiello, supra,* 818 F.2d at 1196, no evidence has been presented to this Court suggesting that Defendants believed that Brown or other City of Galveston employees were entitled to a "just cause" termination standard.

Finally, it is clear that Defendants acted within the scope of their authority. Personnel Rule 4.18(a) states that an employee may be discharged by a department head. Plaintiff's own submissions to this Court clearly state that "Flowers, as department head, terminated Brown." (See Plaintiff's Response to Defendants' Motion for Summary Judgment, at 11). Thus, all three elements of official immunity have been met, and the Court holds that Defendants' Motion for Summary Judgment against Plaintiff's state-law claims of civil conspiracy and intentional infliction of emotional distress should be **GRANTED.** Consequently, Plaintiff's contentions on these issues are hereby **DISMISSED WITH PREJUDICE.**

*4. Plaintiff's Attorney's Fee Complaint*

Finally, Defendants ask this Court to grant them summary judgment on Plaintiff's claims for attorney's fees pursuant to 42 U.S.C. § 1988(b), which allows a prevailing Plaintiff to recover such fees. Having found that none of Plaintiff's claims in this case are valid, Brown is not a "prevailing Plaintiff" for purposes of § 1988. Therefore, Defendants' Motion for Summary Judgment on Plaintiff's claims for attorney's fees is **GRANTED,** and Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

### 3. Conclusion

For all of the reasons stated above, the Court finds that Plaintiff Brown cannot re-

cover against Defendants on any of the § 1983, conspiracy, or state-law claims he has brought. Thus, Defendants' Motion for Summary Judgment against Brown is **GRANTED,** and all of Plaintiff's claims against Defendants are hereby **DISMISSED WITH PREJUDICE.** Furthermore, all other relief not specifically granted herein is **DENIED.** All parties are to bear their own costs. It is further **ORDERED** that the parties file no further pleadings on this issue in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

**DONE.**